IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARY FRYE, individually and as Administratrix
of the Estate of CRAIG FRYE,

       Plaintiff,

vs.

                           CIVIL ACTION NO.  3:18-cv-00393

VEP HEATHCARE, INC.,
and STACY AMANDA DICK, FNP

       Defendants.

## COMPLAINT

### JURISDICTIONAL STATEMENT

1. For all purposes and times relevant to this matter, Craig Frye, deceased, was a West Virginia resident who received medical services in Huntington, WV at St. Mary's Emergency Room from Defendants, VEP Heathcare, Inc. and Stacy Amanda Dick, FNP. Craig Frye's wife, Mary Frye, is the Executrix of the Craig Frye Estate and is the representative Craig Frye's estate in this action and brings an action individually.

2. For all purposes relevant to this matter, Defendant VEP Heathcare, Inc. (Hereinafter sometimes referred to as VEP) is a corporation with its principal place of business in California.

3. For all purposes relevant to this matter, Defendant Stacy Amanda Dick, FNP, (sometimes hereinafter referred to as FNP) resided at South Point, Ohio and was hired by and an employee of VEP.  VEP is and was vicariously liable for all actions of Defendant Dick.  Upon information and

belief Defendant Dick was providing her services at St Mary's Emergency Room as an independent contractor located in Huntington, WV for all purposes relevant to this matter.

4. Mary Frye, the widow of Craig Frye, is a resident of West Virginia and brings this complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.  Defendants' provided medical services to Craig Frye in Huntington, WV at St. Mary's Emergency Room.

## STATEMENT OF FACTS

5. Mr. Frye was transported for approximately 1 hour and 11 minutes to St. Mary's Medical Center at St. Mary's Emergency Room (hereinafter sometimes referred to as St. Mary's or SMMC) by ambulance (Lincoln Emergency Medical Services) on March 17, 2017 after being dispatched for Chest Pain.

6. The St. Mary's medical records incorrectly state that Mr. Frye was a walk in patient.  The St Mary's records indicate Craig was suffering from worsening right upper extremity pain that is worse at the right pectoral area, but also at right elbow and wrist. The pain had lasted for days and was reported at 9 out of 10. Mr. Frye did not receive either an initial or follow-up Electrocardiogram (ECG), nor did he have cardiac enzyme testing (troponin) at St. Mary's despite suffering from pain in the pectoral area, and having several traditional risk factors, including age (66yo), hypertension and diabetes mellitus.  Mr. Frye was a cigarette smoker despite the St Mary's records incorrectly stating he was not.  Mr. Frye did not get examined by a doctor or receive a cardiologist consultation at St. Mary's.

7. Mr. Frye was treated by Defendant Dick, FNP.  Defendant Dick focused solely on Mr. Frye saying he hurt himself opening a medicine bottle.  The medical records indicate that Mr. Frye

denied blunt injury and had no visible bruising/swelling. The pain had been ongoing for 1 week and reported at a 9 level. The FNP ignored signs of acute coronary syndrome (ACS), despite noting right sided chest pain (upper extremity pain that is worse at the right pectoral area) in the records. Defendant Dick did not focus on history related factors associated with ACS, such as Mr. Frye being 66 years of age and suffering from hypertension and diabetes mellitus. The FNP failed to accurately identify Mr. Frye as a smoker. The FNP did not review the ambulance records that state chest pain as reason for dispatch. The FNP failed to order basic ECGs, cardiac enzyme levels (troponin ), or chest radiographs.

8. Mr. Frye was not evaluated for ACS at St. Mary's by Defendant Dick. There was no consideration to being placed in observation with serial ecg and troponin testing, nor was cardiology consultation considered. Mr. Frye was prescribed pain medication and discharged after a total of approximately 53 minutes of treatment at St Mary's Emergency Room.

9. Less than 30 hours later after Mr. Frye was discharged from St. Mary's by Defendant Dick, on Sunday March 19, 2017, an ambulance was dispatched to Mr. Frye's residence due to chest pain in his right side. The March 19 Lincoln ambulance records state the following....Pt advising right sided chest pain ..... Pt states radiates to right elbow. Dull ache. Pt states has been having problems for a week with it, was seen at St. Mary's on Friday, released and told to follow up with PCP and take medications as prescribed, diagnosed with pulled muscle. .....Pt states St. Mary's did not do bloodwork or EKG when seen Friday.... Report given to RN, ekgs turned over. While awaiting face sheet at front desk at Logan Regional Medical Center, pt became unconscious/unresponsive, pending arrest. Assisted ED staff with moving pt to trauma room, hooking pt up, placing defib pads as pt HR dropped to 40's, BP dropped to 60/40. MD asking for

report again. Given and answered all questions until staff satisfied.

10. Mr. Frye was transported to Logan Regional Medical Center. The physician notes the following in the records: Chest pain that is located primarily in the right clavicle and anterior aspect of right upper chest. Onset: gradually, 1 week ago, and became worse today. The pain radiates to the right arm. Pertinent positives: near-syncope....The chest pain is described as aching, dull. ...At its worst the pain was severe this morning, a 9/10 in the emergency department the pain has improved mildly, is a 6/10. EMS care prior to arrival includes, seperin, IV fluids, nitroglycerin, x1, with partial relief of chest pain.

11. Mr. Frye became worse in Logan Regional and was attempted to be life flighted to Charleston Area Medical Center (CAMC) but due to bad weather was transported by ambulance. The cardiologist that treated Mr. Frye at CAMC was Dr. Aravinda Nanjundappa. The medical records in the discharge summary at CAMC state the following: This is a 66 year old Caucasian with past medical history significant for hypertension, diabetes mellitus, hypercholesterolemia, tobacco use, continues to smoke at present time. The patient one year ago, had a stress test which was performed at outside hospital at Cabell Huntington which was noted to be negative according to the family. ...One week ago the patient had right-sided chest pain and radiating to the right side of the shoulder. The patient underwent evaluation at (St Mary's) 24 hours ago, however, the patient was sent home according to the family without further evaluation. The patient was noted to have chest pain this morning at 3:00 a.m. and subsequently the patient was brought to (Logan Regional) and subsequently CAMC which show ST depression in the anterior leads with a tall R-wave in V1.......The patient's hemodynamic status continued to deteriorate and patient's coronary anatomy showed LAD having sequential 70-80% lesion in the proximal segment....The patient had a cardiac

arrest and unable to be resuscitated despite 30 minutes of CPR....This is an unfortunate situation with the patient and with grave outcome of mortality noted after cardiac arrest after 30 minutes of CPR, the patient was pronounced.

12. The Defendant VEP provided medical treatment to Craig Frye on and during March 17, 2017, through its' designee, employee or agent Defendant Dick.

13. On March 17, 2017 and during this medical treatment, the Defendants failed to diagnose and properly treat Craig Frye timely for his ACS, in violation of the applicable standard of care. Defendant Dick deviated from the standard of care for reasonably prudent emergency room treatment. These deviations are based on the standard of care established by the American College of Cardiology and American Heart Association for diagnosis and treatment of patients with ACS, Emergency Room treatment, and general medicine. Stacy Amanda Dick, FNP, breached the applicable standard of care in caring for Craig Frye in cardiac and emergency medicine the following ways:

    a. Defendant Dick failed to properly evaluate Mr. Frye with a targeted medical history and focused physical examination. Defendant Dick failed to take a proper medical history, or discuss or review all the records available to St. Mary's on March 17, 2017, including the ambulance records. Defendant Dick failed to perform a proper Emergency Department evaluation of Mr. Frye's symptoms and medical history to rule out ACS. Mr. Frye had reported chest pain to 911, reported pain in the upper pectoral area to Defendant Dick. Mr. Frye was 66 years of age and suffering from hypertension, diabetes mellitus and smoked cigarettes. These symptoms combined with the patient's history related factors are signs of ACS and require basic evaluation

      and serial ECSs, cardiac enzyme levels, and consideration for stress testing or other cardiac specific testing, or chest X-rays to rule out ACS.

b.     Defendant Dick failed to give Mr. Frye a 12 lead ECG within no more than 10 minutes after the arrival in the ED of a patient with chest discomfort or other symptoms suggestive of ACS. Defendant Dick failed to have an experienced emergency physician review the results of 12 lead ECG within no more than 10 minutes of Mr. Frye's arrival.

c.     Defendant Dick failed to give Mr. Frye aspirin in a dose of at least 162 to 325 mg. Defendant Dick failed to give Mr. Frye IV heparin.

d.     Mr. Frye was deprived of basic serial ECGs, cardiac enzyme levels (Troponin tests), Stress tests, or chest radiograph on March 17, 2017 by Defendant Dick. Defendant Dick failed to keep Mr. Frye admitted long enough to allow Troponin tests repetition of the assay 8 to 12 hours after the onset of symptoms

e.     Defendant Dick failed to properly diagnose and identify ACS, more specifically signs of a Myocardial Infarction and failed to communicate immediately with a cardiologist.

14. As a proximate cause of the Defendants' acts or omissions, Craig Frye died.

15. Mary Frye witnessed her husband suffer from the ACS symptoms from the time he was improperly treated by FNP Dick until his death 2 days later.

16. Thirty days or more prior to the filing of this Complaint, the Plaintiff served Defendant Dick by certified mail, return receipt requested, a "notice of claim" letter and a screening Certificate of Merit.

## COUNT I
### (NEGLIGENCE/MEDICAL MALPRACTICE/WRONGFUL DEATH)

17. Plaintiff incorporates and restates all of the above and further pleads:

18. The Defendants' conduct as set forth herein constitutes a breach of the accepted standards of care and a breach of duties owed to Craig Frye and the Plaintiff. Defendants' actions and inactions deviated from the standard of care, and failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the defendants belong acting in the same or similar circumstances.

19. As a direct and proximate cause or result of the deviations from the standard of care and negligence of the Defendants, Craig Frye suffered pain, mental anguish and other damages as outlined in § 55-7B-3 et seq.

20. As a further direct and proximate cause of Defendants' negligent conduct and deviations from the standard of care, Craig Frye died and suffered damages under W. Va code 55-7-5 et seq.

21. In the alternative, as a direct and proximate cause and result of the aforementioned errors and omissions and deviations from the standard of care, Mr. Frye suffered a myocardial infarction resulting in his death two days later and deprived Mr. Frye of a chance of recovery or increased the risk of harm to Mr. Frye which was a substantial factor in bringing about the ultimate injury or death to Mr. Frye. Had Mr. Frye been properly treated by Defendants at St. Mary's it is likely that serial ECSs, repeated cardiac enzyme levels and other testing would have alerted Defendants that Mr. Frye was suffering from ACS. Had Mr. Frye been properly treated by Defendants at St. Mary's it is likely Mr. Frye's death on March 19, 2017 would have been prevented by a greater than twenty-five percent chance.

## COUNT II

## (MARY FRYE'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

22. The allegations contained in paragraphs one through 21 are hereby incorporated into this Count II.

23. On March 17, 2017 Mary Frye was with her husband Craig Frye from the time he entered St. Mary's emergency waiting room until he was released approximately 1 hour later.

24. During the time of treatment and over the final 24-48 hours of Mr. Frye's life, Mr. Frye suffered extreme mental and physical pain and suffering.

. 25. On March 17, 2017, March 19, 2017 and the hours in between, Mary Frye suffered serious emotional distress watching her husband suffer and die as a result of the negligent/malpractice medical treatment he received or failed to receive from the defendant..

26. Mary Frye suffered such severe emotional distress as a result of the actions and failures of defendants set out herein.

## PRAYER

WHEREFORE, plaintiff, Mary Frye on behalf of Craig Frye's estate and individually, demands judgment against the defendants, as follows:

a. Medical expenses, past and future;
b. Pain and suffering, past and future;
c. All damages allowed under Wrongful Death act as outlined in W. Va code 55-7-5 et seq and 55-7B-3 et seq.
d. Economic damages, past and future;
e. Annoyance and inconvenience, past and future;
f. Attorney's fees, costs and expenses associated with prosecuting this action;
g. Pre-judgment and post-judgment interests; and,
h. Any other relief to which the Plaintiffs are entitled.

A TRIAL BY JURY IS DEMANDED ON ALL ISSUES

                                      MARY FRYE, INDIVIDUALLY and
                                      ADMINISTRATRIX OF CRAIG FRYE'S
                                      ESATE, Plaintiff,
                                      By Counsel,

_s/Ben Conaway_
Benjamin Conaway (WVSB #9332)
Timothy R. Conaway (WVSB #793)
Counsel for Plaintiff
63 Avenue B
Madison, West Virginia  25130
(304) 369-0100